36 F.3d 1099
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Randy JENSEN and Othello Upshaw, individually and on behalf
of all others similarly situated, Plaintiffs-Appellees,
v.
Stephen R. STIGLICH, Sheriff of Lake County, Defendant-Appellant.
 No. 93-3532.
 United States Court of Appeals, Seventh Circuit.
 Argued April 13, 1994.
Decided Aug. 3, 1994.
 
 Before CUMMINGS, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 The Sheriff of Lake County, Stephen R. Stiglich, appeals from the district court's order denying his petition to partially modify a consent decree establishing a merit-based system for the non-political hiring, promotion and discharge of correctional officers at the Lake County Jail. For the following reasons, we affirm the order of the district court.
 
 I.
 
 2
 The dispute in this case stems from a larger controversy which began 20 years ago between the Sheriff and the inmates of the Lake County Jail. In 1974, several inmates filed a class action against Lake County, Indiana, the Board of Commissioners of the County of Lake, the Lake County Council and the Lake County Sheriff (Sheriff, for short) challenging the constitutionality of various conditions at the Lake County jail. One of the challenged conditions was the treatment of the inmates. Prior to the filing of the suit, Lake County did not employ full-time correctional officers to oversee its jail. Instead, it used police officers who, as a result of being disciplined for their own misconduct, were "punished" by being assigned to the jail to serve as correctional officers. According to the inmates' claims, some of the transferred police officers were not pleased with their temporary assignments and would take out their displeasure on the inmates, resulting in claims of brutality and the like.
 
 
 3
 The inmates' claims were settled in 1980 when the court entered a consent decree signed by both parties (the 1980 decree). Among other things, the 1980 decree required: (1) compliance by jail personnel with standardized rules and procedures; and (2) protection of prisoners from harm caused by jail personnel and other prisoners. R. 344 at 1.
 
 
 4
 Less than two years later, the defendants were still not in compliance with the 1980 decree. Rather than litigate the issue of contempt, the defendants entered into a broader and more detailed agreement regarding the steps they would take to improve the conditions at the jail. This agreement was embodied in a "Judgment Order" of the court entered on June 28, 1982 (the 1982 decree). R. 344 at 2. The portions of the 1982 decree that are relevant to this appeal provided:
 
 
 5
 19. The county agrees that a separate corrections divisions will be established within the sheriff's department for administration of the jail. [Court-appointed] Monitors will work with the sheriff, warden and other parties to create the separate correctional division in accordance with the law. The defendants agree to adopt necessary incentives for employment in the corrections division to overcome the past view that assignment to the jail was punishment. The separate corrections division shall be established as soon as possible, but no later than January 1, 1983.
 
 
 6
 20. The corrections division shall be staffed with a sufficient number of properly trained personnel to assure adequate security and protection of inmates within the 'reasonable risk' standard as interpreted in the report of the total number of personnel and the number within each rank or job classification required to meet this standard, as well as the appropriate deployment and responsibilities of said personnel.
 
 
 7
 R. 325 at 1-2 (emphasis added). Also at that time, the district court appointed a federal corrections monitor to ensure implementation of the 1982 decree.
 
 
 8
 The defendants failed to fully implement the management and staffing changes required by the 1982 decree. Therefore, on July 9, 1985, the district court, sua sponte, issued an order entitled "Order Regarding Implementation Of Jail Administration Programs." In that order, the judge issued the following requirements relating to the administration of the Lake County Jail:
 
 
 9
 1) By no later than July 1, 1986, the Corrections Division of the Lake County Sheriff's Department shall be staffed exclusively by corrections officers. That does not means [sic] that sheriff's police officers who are now working in the Corrections Division should be discharged. Rather, the sheriff's police officers should be returned to regular police functions or, if qualified, retained as corrections officers.
 
 
 10
 2) By no later than January 1, 1986, all corrections officers shall be employed pursuant to a merit system administered under the auspices of an independent merit board. The hiring, promotion and discharge of corrections officers shall be carried out without regard to political affiliation or influence.
 
 
 11
 3) By no later than January 1, 1986, all allocated positions in the Corrections Division staff must be filled.
 
 
 12
 4) By no later than January 1, 1986, the pay and benefits for corrections officers shall be equivalent to pay and benefits for equivalent rank for sheriff's police.
 
 
 13
 R. 310 at 2 (emphasis added). To ensure implementation of these requirements, the court further ordered that the court-appointed corrections monitor draft the following: "(1) policies and procedures establishing a Correctional Division merit system, including provisions for nonpolitical hiring, promotion and discharge; and (2) policies and procedures for general administration of the jail, including a staffing plan for the Corrections Division which provides for the number of Corrections Division employees, manning tables and ranks." R. 310 at 2. These proposed policies and procedures, once approved by the court, would then provide the specific programs required by the court's order. Id. The penultimate paragraph of the 1985 decree (or, the "implementation clause") states that "[u]ntil the full implementation of all the requirements set forth above the corrections monitor shall have final authority for: (1) all hiring, promotion, and discharge of corrections officers, and (2) the supervision of all corrections officers." R. 310 at 3.
 
 
 14
 From the record before us, it appears that many of the requirements of the 1985 decree may have been met. We say this based on certain statements contained in an order from 1986 denying a motion to intervene filed by the Lake County Correctional Officers Union.[1] In that order, the court stated that "the primary reason for the filing of this case was to insure that inmates, housed in the Lake County Jail, are treated fairly and humanely." R. 325 at 3. The court continued:
 
 
 15
 In achieving this objective, an ancillary concern was to improve the organization and operation of the Lake County Jail. In this regard, it was necessary to create a professional corrections division to staff the jail on the basis of merit instead of on the bases of 'politics' and 'punishment' which previously governed personnel staffing of the jail and was an element bearing on the treatment of inmates.
 
 
 16
 Id. (emphasis added). After repeating the requirements of the 1985 decree, the court went on to note that Lake County, pursuant to the 1985 decree, had established a separate Corrections Division for the Lake County Jail "staffed by correctional officers hired through non-political selection." Id. at 4. The district court further stated that Lake County had created an independent merit board, and that the board, pursuant to its own rules and regulations, was supervising all employment decisions at the Lake County Jail. Id. What is more, the court stated that the correctional division and merit board were specifically approved by the court and that "the operation of the independent corrections merit board has concluded that phase of the lawsuit dealing with the ancillary aspect of the lawsuit pertaining to the hiring, promotion and discharge of corrections officers." Id. (emphasis added).
 
 
 17
 As mentioned in the 1986 order, the merit board adopted rules used in supervising the employment of correctional officers at the Lake County Jail. Early on, the merit board, under the guidance of the corrections monitor, adopted the following rules detailing the hiring and promotion of correctional officers: applicants and current correctional officers would take job-related tests administered by the merit board; based on their scores, they would then be ranked on the merit board's eligibility lists; all hiring and promoting would thus be based on a person's rank on the eligibility list without regard to political affiliation.
 
 
 18
 On January 14, 1993, the merit board, at the suggestion of the Sheriff, amended these rules to allow the Sheriff to recommend for employment to the merit board whomever he chose from the merit board's list without regard to the prospective employee's order on the list. R. 422 at 3. The corrections monitor objected to this amendment, believing that granting such discretion to the Sheriff would interfere with the requirement in the 1985 decree giving the monitor final authority over employment decisions at the jail. The monitor also believed that giving the Sheriff discretion to select whomever he wanted from the eligibility list, without regard to rank, would vest the Sheriff with full authority over the employment decisions thus leading to the return of political hiring. The Sheriff countered that since all the requirements of the 1985 decree had already been implemented then, according to the implementation clause of the 1985 decree, the monitor was no longer necessary in matters concerning employment of correctional officers.
 
 
 19
 This dispute between the Sheriff and the monitor over the understanding of the 1985 decree was never resolved. Therefore the Sheriff, on May 11, 1993, filed a petition with the district court requesting the district court to modify the 1985 decree to indicate that the Sheriff and the merit board would now be jointly responsible for the hiring and supervision of correctional officers at the Lake County Jail, without any further involvement by the court-appointed monitor. In support, the Sheriff alleged that a non-political corrections merit system had been established in 1986 and that since then, all the requirements of the 1985 decree regarding the employment of correctional officers had been carried out without regard to political considerations. R. 423 paragraphs 3-7.
 
 
 20
 On May 26, 1993, the parties were before the district court at a status hearing on the separate issue of jail overcrowding. At that time, the district court raised the issue of the Sheriff's recently-filed petition and questioned the Sheriff in open court regarding his reasons for requesting modification. Apparently, the Sheriff did not raise the arguments contained in his petition. Instead, he advanced two altogether different arguments found nowhere in his original petition: first, modification was necessary to allow the Sheriff the same discretion in hiring correctional officers as he had in hiring merit police officers pursuant to Indiana statutory law[2]; and second, that he needed more discretion in hiring correctional officers to ensure the proper racial and gender balance in the composition of the correctional officers. The parties agree that the district judge at that time raised concerns that granting the Sheriff's request could lead to the return of hiring correctional officers on the basis of political patronage. Following this interchange, the district judge stated that he would rule on the Sheriff's petition following additional briefing by the parties. R. 424. Briefs in opposition to the Sheriff's petition were filed by the plaintiffs and the third-party intervenors Lake County Correctional Officers Union, both of which contended that the Sheriff's proposed modification was a pretext to return to political patronage. The Sheriff filed no additional materials, apparently betting on the arguments raised at the status hearing.
 
 
 21
 On September 14, 1993, the district court entered an order denying the Sheriff's petition to modify. In its order, the district court did not address the Sheriff's contentions contained in his petition that the terms and conditions of the 1985 decree had been fully implemented. Instead, the court addressed the arguments raised by the Sheriff at the status hearing regarding the racial and gender composition of the correctional officer force. The court rejected the Sheriff's argument that the requirements of the 1985 decree somehow hindered the Sheriff from fully complying with civil rights laws. Summing up, the court stated that "with all deference to the Sheriff and his counsel, it appears that the issue of race and gender is being asserted as a basis of an argument to basically return to the older system that was condemned by implication in the Consent Decree." R. 432 at 4. Accordingly, the district court denied the Sheriff's petition to modify. The Sheriff filed a notice of appeal from the district court's denial over which we have appellate jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1).
 
 II.
 
 22
 The Sheriff claims that the district court abused its discretion in denying his petition to modify the 1985 decree. To obtain a modification of a consent decree stemming from institutional reform litigation, the petitioner "must establish that a significant change in facts or law warrants revision of the decree." Rufo v. Inmates of Suffolk County Jail, 112 S.Ct. 748, 765 (1993). The district court's decision to grant or deny a modification is an equitable one, which we will not set aside unless the district court abused its discretion. See Duran v. Elrod, 760 F.2d 756, 761-62 (7th Cir.1985).
 
 
 23
 We expressed our puzzlement at oral argument as to why the Sheriff thought that he was seeking a "modification" of the 1985 decree. Nowhere in his petition to the district court did the Sheriff point to any significant, unanticipated changes in factual conditions which would make compliance with 1985 decree substantially more onerous. See Rufo, 112 S.Ct. at 760. Nor, for that matter, did he direct the district court to any changes in the relevant underlying law as a basis for obtaining relief below. For instance, had the Supreme Court ruled differently in Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), and held that the rule announced in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), does not apply to promotions, transfers and hiring decisions based on political affiliation, then this would constitute a significant change in the underlying law under Rufo, thus providing a basis for seeking modification of the 1985 decree. But of course Rutan held just the opposite, see Rutan, 497 U.S. at 79, and the Sheriff in his petition did not direct the district court to any other changes in the relevant law as a basis for modification. Thus the Sheriff, in failing to demonstrate either of the necessary prerequisites under Rufo, can hardly claim error, much less an abuse of discretion, on the part of the district court in denying his petition to modify.[3]
 
 
 24
 After pursuing the matter at oral argument, we believe the Sheriff's real argument is that since the requirements contained in the implementation clause have been fully carried out, then, according to the literal terms of the clause, the court-appointed monitor should no longer be involved in employment matters at the Lake County Jail. This, however, is not a request for a modification of the 1985 decree at all, but rather, for implementation of the literal terms of that decree. It may very well be that, as the Sheriff asserted at oral argument, all the conditions of the implementation clause have been carried out. Of course, we cannot make that factual determination de novo; such is the province of the district court. See Kindred v. Duckworth, 9 F.3d 638, 644-45 (7th Cir.1993). Should the Sheriff at some later date file a petition with the district court seeking implementation of the 1985 decree, then that petition will have to be evaluated based on the evidence presented by the Sheriff in support of his petition. And in evaluating such a petition, the district court should bear in mind that since the only legal justification for federal courts assuming oversight of areas of state and local concern is a violation of the Constitution, any relief fashioned to remedy such violations should be terminated once the constitutional objective has been achieved. See Board of Education of Oklahoma City Pub. Sch. v. Dowell, 498 U.S. 237, 248 (1991) (stating that once the purposes of the underlying litigation have been achieved, a consent decree entered into as a settlement of that litigation should be dissolved); accord Duckworth, 9 F.3d at 644 (same).[4] But as for the petition filed by the Sheriff in this case, we simply reiterate our conclusion that it was not a request for modification at all, and therefore the district court acted within his discretion in denying it.
 
 III.
 
 25
 The district court's order denying the Sheriff's petition for modifying the decree is therefore AFFIRMED.
 
 
 
 [1]
 The Union's position was that when the separate corrections division was set up pursuant to paragraph 19 of the 1982 decree, the district court failed to require that correctional officers be given equal status and pay with police officers. The intervenors alleged that this disparity of status and pay between the correctional officers and police officers led to further morale problems and threatened to undermine the district court's objective of overcoming the attitude among correctional officers that assignment to the Lake County Jail was punishment. R. 312 at 3-4. The Union claimed that intervention was necessary since their concerns would not be adequately protected by the existing parties. R. 312 at 2 p 4. The district court denied the Union's petition, noting that most, if not all, of the Union's concerns had been eliminated by virtue of the 1985 decree which, as pointed out by the district court, was entered two months before the Union filed its petition for intervention. R. 325 at 6
 
 
 [2]
 The statute relied on by the Sheriff, Ind.Code 36-8-10-10, provides:
 (a) Except for the positions of chief deputy and prison matron, over which the sheriff has complete hiring authority, the sheriff, with the approval of the board, shall establish a classification of ranks, grades, and positions for county police officers in the department. For each rank, grade and position established, the sheriff, with the approval of the board, shall set reasonable standards of qualifications and fix the prerequisites of training, education, and experience.
 (b) The sheriff, with the approval of the board, shall devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions. After these examinations, the sheriff and the board shall jointly prepare a list naming only those applicants who in the opinion of both the sheriff and the board best meet the prescribed standards and prerequisites. The sheriff appoints county police officers, but only from among the persons whose names appear on the list. All county police officers appointed to the department under this chapter are on probation for one a period of one (1) year from the date of appointment.
 Ind.Code 36-8-10-10 (Supp.1993).
 
 
 [3]
 What is more, the arguments advanced by the Sheriff at the status hearing could only have served to further obscure the relief that the Sheriff really desired. When asked in open court to explain the basis for his petition, the Sheriff presented the rather strange argument that modification was what was needed to provide him with more discretion in the hiring and firing of correctional officers which, in turn, would ensure the appropriate racial and gender mix in the Lake County correctional officer force. However, the Sheriff, in asserting this as a justification, presented nothing to the district court explaining how resort to race and gender constituted the least restrictive means to remedy any incidents of prior discrimination along those same lines (which the Sheriff also failed to establish), thus violating the rule of law announced by the United States Supreme Court in City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989). This alone would have provided the district court with ample grounds for denying the Sheriff's petition
 
 
 [4]
 At oral argument the plaintiffs suggested that the proper standard for determining whether the court-appointed monitor should continue his involvement at the Lake County Jail is whether removing him would run the risk of the Sheriff returning to the same practices that gave rise to those portions of the 1985 consent decree in the first place. This test, however, was squarely rejected by Dowell, and understandably so, for it would justify the continuation of consent decrees in perpetuity. See Dowell, 498 U.S. at 249. Should the Sheriff use the court-appointed monitor's absence as a basis to return to political patronage hiring, then, according to Dowell, this can form the basis for new relief. See id. at 250